UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VIVIANA SIMON,

               Plaintiff,

    -vs-

CAROLYN W. COLVIN, Commissioner
of Social Security,

Defendant.[1]

_____

**DECISION AND ORDER
No. 6:12-CV-6381(MAT)**

## INTRODUCTION

Viviana Simon ("Simon" or "Plaintiff"), represented by counsel, brings this action pursuant to the Social Security Act § 216(i) and §223, seeking review of the final decision of the Commissioner of Social Security ("Defendant" or "the Commissioner") denying her application for disability insurance benefits ("DIB") and finding her ineligible for supplemental security income ("SSI"). The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On May 20, 2009, Plaintiff protectively filed applications for SSI, alleging an onset date of April 1, 2009. T.279-284. Plaintiff, who was one day shy of 63 years old at the onset date, alleged that she was unable to work due to diabetes, hypertension, depression and

---

1 Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted, therefore, for Michael J. Astrue as the defendant in this suit.

language barrier. T.184. After her benefits applications were denied, Plaintiff requested a hearing, which was conducted by Administrative Law Judge Scott M. Staller ("the ALJ") on March 1, 2011. T.43-68. The ALJ denied Plaintiff benefits in a written decision issued on March 31, 2011. T.20-30. This decision became the final decision of the Commissioner on May 16, 2012, upon the Appeals Council's denial of Plaintiff's request for review. T.1-3.

Plaintiff timely commenced the instant action. Presently pending are Plaintiff's Motion for Judgment on the Pleadings and the Commissioner's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is granted in part, Defendant's motion is denied, and the matter is remanded for further administrative proceedings.

**FACTUAL BACKGROUND**

**A.   Educational and Vocational Background**

Plaintiff is a 67 year old woman from Cuba with a twelfth grade education. T. 50, 52.  Plaintiff entered the United States in September, 2004 and speaks some English. T. 50. She testified that she suffers from diabetes, high blood pressure and depression. T. 52. She worked for five months in 2007 as an adult care provider cleaning and bathing patients, lifting patients and sitting them in a chair and assisting them to walk or transfer them to a wheelchair. T. 51, 285.

Simon testified that she cries "a lot for no reason" and suffers from memory lapses. T.53. Simon spends approximately six hours each day lying down because she often feels dizzy from the medications she takes. T.54.  She is able to take care of her personal needs and can cook at times but has assistance with grocery shopping. T.54-55. Simon testified that the most weight she could lift is ten pounds. T. 59.

Simon was diagnosed with diabetes 15 years prior to the hearing date and had been taking insulin for three years. T.57  Plaintiff testified that she takes Novolog and Lantus every day to regulate her diabetes and takes Fluoxetine for depression and Lipitor for cholesterol control and Loratadine. T.56.

**B.   Medical Background**

Plaintiff was treated at the Evelyn Brandon Health Center ("EBHC") of Unity Hospital for depression from February, 2009 through January, 2011.  She underwent a mental health evaluation by Carlos Bahr, L.M.S.W. who diagnosed Simon with a "Major Depressive Disorder, recurrent, moderate severity." T. 335. Plaintiff reported that she had a long standing history of depression since she was an adolescent. T. 342. Her parents abandoned her at 11 and 12 years old and she lived independently at the age of 14 with a 7 year old sister who was legally blind. T. 342.  The medical records indicate that Plaintiff's depression had increased over the prior 10 months since she was separated from her schizophrenic daughter who lives in Florida. T. 380.  Plaintiff reported that she was treated inpatient

for depression in Cuba when she was 45 years old followed by outpatient mental health services. T. 343. Social Worker Bahr found Plaintiff's behavior passive, her mood depressed and her affect congruent with her mood. T. 345. He assessed Plaintiff as having a Global Assessment of Functioning ("GAF") score of 56.

Treatment notes in April, 2009 indicate that Plaintiff reported experiencing feelings of loneliness and continued problems with insomnia. T. 386. She was assessed with a GAF score of 60 and Social Worker Bahr noted that Plaintiff had "some anxiety which may not rise to the level of axis I diagnosis." T. 394. Plaintiff underwent a psychiatric evaluation by Dr. Kevin McIntyre who noted Plaintiff's history of depression and her current feelings of "increasing depression including tearfulness, decreased desire to live, [and] lack of interest and activity." T. 348. He prescribed Prozac and Trazodone which was later discontinued due to lack of effectiveness. T. 337. Plaintiff continued with Prozac and Ambien was prescribed to help with her inability to sleep. Tr. 398. Two weeks later, Plaintiff reported that she was doing better, not crying as much and claimed Prozac was "very helpful." T. 337.

Plaintiff was examined by an independent physician, Dr. George Alexis Sirotenko, on June 25, 2009. T. 361-364. Dr. Sirotenko noted Plaintiff's history of diabetes, hypertension and depression. He noted that her blood sugars ranged between 250 and 270. He also noted her history of depression which was being treated by EBHC. Medications provided Plaintiff relief from the symptoms of

depression. T. 361.  Plaintiff was taking Lantus and Actos to control the diabetes.   She also took Lisinopril/Hydrochorothiazide, Fluoxetine, Ambien, and INH. T. 361.   Dr. Sirotenko noted that Plaintiff was able to cook, clean, shop and do laundry every day.  He concluded that Plaintiff's "current physical examination is essentially within normal limits." T. 364.   He further found no physical limitations but "given her history of depression, consideration of a formal psychiatric or psychological evaluation may be warranted." T. 364.

In July, 2009, Plaintiff returned for a therapy session with Social Worker Bahr.  She reported that her mood improved with Prozac and the Ambien has helped her sleep better but she was still isolated and had problems with trust.  T. 406.  In August, 2009, Plaintiff indicated that she felt that she needed to break through her isolation and so was planning to visit her daughter in Florida. T. 410.  An independent psychiatric examination conducted in July, 2009 found Plaintiff to have no severe impairment based on an affective disorder. T. 366

In September, 2009, Simon presented to her therapist as "mildly depressed" and frustrated. T.413. Similarly, in October, 2009, Plaintiff appeared "in no apparent distress" although worried about her schizophrenic daughter in Florida.  Later in the month, Plaintiff was described as "doing well with continued good mood, good sleep." T. 414, 416.  Similarly, in January, 2010, Plaintiff reported that she was in a good mood and doing well with sleep and energy. T. 423.

In November, 2009 Social Worker Bahr's treatment notes indicate that Plaintiff decided to shave her head because she felt that she was losing her hair.  She reported that "for a few days she was not aware that she was getting up at night and emptying the refrigerator of food." T. 420.  This behavior she attributed to Ambien.  The treatment notes indicate that "schizoid personality disorder" should be ruled out. T. 420.

On June 10, 2010, Plaintiff appeared reserved and tired at her appointment. T. 437. Plaintiff's daughter relocated to the area but Plaintiff tried to "maintain distance from her." T. 437.  Later in the month, Plaintiff complained of feeling depressed with lack of motivation, market isolation and intermittent crying, insomnia, pessimism and irritability. Tr. 439. Plaintiff stated that although she had thought that relocating her daughter to the area would make her feel better, she continued to feel lonely most of the time. T. 439. Social Worker Bahr encouraged Plaintiff to become involved with a senior citizen activity group but Plaintiff declared she was not interested. T. 439.

Dr. McIntyre examined Plaintiff in July, 2010. Plaintiff reported a tendency to isolate at home and avoid socialization.  She reported decreased energy, frequent tiredness and that "she often stays in bed during the day." T. 442.  She was continued on Prozac and Ambien. Tr. 443.

Treatment notes from Social Worker Bahr in September, 2010 continued to show Plaintiff's lack of activity and isolation. T. 452.

Dr. McIntyre's notes from December, 2010 indicate that Plaintiff was making progress but that she continued to isolate herself and had no intentions of changing this behavior. T. 467.

On February 9, 2011, Dr. Huan Yi Tsai and Dr. Esther Tanzman completed a Medical Source Statement. T. 469-472. They reported treating Plaintiff for two years. T. 469. Plaintiff had diagnoses of diabetes, hypertension, depression, insomnia and diabetic neuropathy. T. 469. They estimated that Plaintiff could walk 3 city blocks without rest or severe pain. She could sit up to two hours at one time and stand for up to 30 minutes before needing to get up. T. 469. In an 8 hour workday, they estimated that Plaintiff could sit for a total of 2 hours and stand a total of less than two hours. Plaintiff would need a job that permits shifting positions from sitting and standing and walking and need to take unscheduled breaks every two hours. T. 469. They estimate that Plaintiff could frequently lift and carry ten pounds or less but only rarely lift 20 pounds and never 50 or more pounds. T. 470. Plaintiff could frequently look down, turn her head, look up or hold her head in a static position. T. 470. She can occasionally twist, stoop, bend, climb ladders, stairs and rarely crouch or squat. However, Plaintiff could frequently grasp, turn or twist objects, make fine manipulations with her fingers and reach with her arms. They further found that plaintiff was seriously limited but not precluded from remembering work-like procedures, understanding and remembering short, simple instructions, sustaining an ordinary routine without special supervision, work in coordination

with or proximately to others, make simple work-related decisions, perform at a consistent pace without an unreasonable number and length of rest periods and respond appropriately to changes in a routine work setting. T. 471. Plaintiff was limited but satisfactory in her ability to carry out short and simple instructions, maintain attention for two hour segments, maintain regular attendance and be punctual within customary usually strict tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, deal with normal work stress and be aware of normal hazards and take appropriate precautions. T. 471. The physicians detailed that Plaintiff had a history of depression and poor memory that would "limit some of her work abilities." T. 471. They estimated that Plaintiff would be off task about 20% of the time during an 8 hour workday and there would be more than four days per month that would be "bad days." T. 471. Finally, the doctors noted that Plaintiff's diabetic neuropathy would likely affect Plaintiff's mobility and her depression and poor memory would make it difficult to carry out some work related tasks. T. 472.

### D.    The Vocational Expert's Testimony

The ALJ asked the vocational expert ("the VE") to assume an individual of Plaintiff's age and education and who only spoke Spanish and who was limited to (1) occasionally climbing ramps and stairs; and (2) never climbing ladder, ropes, or scaffolding. As to mental limitations, the individual was able to (1) understand, remember and carry out simple instructions; (2) make judgments on simple, work-related decisions; (3) able to interact appropriately with supervisors and workers in a routine work setting and respond to usual work situations and to changes in a routine work setting; (4) maintain attention and concentration for two-hour segments with normal work breaks over an eight-hour period; and (5) complete a normal work without excessive interruptions from psychologically or physically based symptoms. T.64. The VE testified that such an individual would be able to perform light exertional level work. T.64. If that same individual were able to frequently climb ramps or stairs and frequently balance, stoop, kneel, crouch and crawl, the VE testified that there would also be jobs available at the medium exertional level. T. 65.  At this level, the VE identified the positions of laundry worker and machine presser as available for this hypothetical individual. T. 65.  If the worker missed 20 percent or more of the workday, the VE testified that there would be no jobs available.  Further, if the individual missed three days or more of work, there would also be no jobs available. T. 66.

**DISCUSSION**

## I. General Legal Principles

The Commissioner's decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); see also, e.g., Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

This deferential standard is not applied to the Commissioner's conclusions of law, however. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). This Court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. "Failure to apply the correct legal standards is grounds for reversal." Townley, 748 F.2d at 112. Therefore, this Court first reviews whether the applicable legal standards were correctly applied, and, if so, then considers the substantiality of the evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

The Commissioner's determination will not be upheld if it is based on an erroneous view of the law that fails to consider highly probative evidence. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). In such cases, the reviewing court has the authority to reverse with or without remand. See 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.  **The ALJ's Decision**

The ALJ followed the required five-step analysis, see 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v), for evaluating disability claims. Under step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time during the period from her alleged onset date of May 20, 2009. T.22. Although Plaintiff had worked after the application date, the ALJ specifically noted that the work did not rise to the level of substantial gainful activity. T.22.

The ALJ found, at step two, that Plaintiff has the following "medically determinable impairments": obesity, diabetes, hypertension and major depressive disorder. T.22. However, the ALJ determined that Plaintiff's impairments, considered singly or in combination, are not expected to limit the ability of Plaintiff to perform basic work related activities for 12 consecutive months. Therefore, he concluded that Plaintiff does not have a "severe" impairment or combination of impairments within the meaning of the regulations. T.22.

At step three, the ALJ concluded that the claimant's impairment or combination of impairments do not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926). He noted that the evidence of Plaintiff's diabetes does not meet or equal the severity of listing level diabetes because section 9.08 requires a

diagnosis of diabetes with A) neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station; B) acidosis occurring at least on the average of once every two months, documented by appropriate blood chemical tests; or C) retinitis proliferans.   Further, he concluded that Plaintiff's depression does not meet or equal the criteria for listing 12.04.   To satisfy the paragraph B criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration.   Repeated episodes of decompensation means three episodes within one year, or an average of once every four months each lasting for at least two weeks.

Even if the ALJ had concluded that Plaintiff suffered from "severe" impairments, he also found that based on the residual functional capacity ("RFC"), Plaintiff was able to perform medium level work with certain limitations. T.28.   He relied on the testimony of the VE to find that Plaintiff was able to perform the requirements of laundry worker and machine presser.

## III. Plaintiff's Arguments

### A.   The ALJ Erred by Failing to Develop the Record

a. <u>Failure to obtain medical records from Plaintiff's treating physicians</u>

Plaintiff first argues that the ALJ erred by failing to properly develop the record by not obtaining the medical records from Dr. Huan Yi Tsai and Dr. Esther Tanzman.  I agree.  The ALJ has a duty to develop the record regardless of whether the claimant is represented by counsel. <u>Shaw b. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000). This duty includes "an 'affirmative obligation to develop the claimant's medical history' in cases 'where there are deficiencies in the record.'" <u>Sanchez v. Barnhart</u>, 329 F.Supp.2d 445, 450 (S.D.N.Y. 2004) (citing <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 (2d Cir. 1999).

The ALJ did not have the benefit of the medical records from Plaintiff's treating physician other than her mental health records. He nevertheless concluded that the opinions of Plaintiff's treating physicians in their Medical Source Statement regarding Plaintiff's physical limitations were "not consistent with the objective medical record" and "progress notes". T.26 The duty to develop the record is "particularly important with regards to the opinions of a claimant's treating physician(s), as the ALJ must adhere to the treating physician rule and provide special evidentiary weight to the opinions of a treating physician that are backed by clinical evidence and are not substantially inconsistent with other evidence in the record. <u>Whitney v. Astrue</u>, NO. 09-CV-0484, 2010 U.S.Dist. LEXIS 76485 at *8

(W.D.N.Y. July 29, 2010). The fact that the ALJ held the record open for an additional 14 days so the medical records could be obtained after Plaintiff's counsel informed the ALJ that he had ordered but had not yet received these records does not relieve the ALJ from his affirmative obligation to develop the record where, as here, the ALJ gave only "some weight" to the treating physician's opinions based on the lack of underlying objective medical evidence to support the opinion. T.26.

On remand, the ALJ shall contact Dr. Tsai and Dr. Tanzman and request copies of any office notes and other records pertinent to their treatment of Plaintiff. Assuming these records exist, the ALJ will be in a better to position to assess the weight to be given to their opinions.

b. Failure to obtain a medical source statement from Plaintiff's treating social worker

Plaintiff next argues that the ALJ erred by his failure to obtain a medical source statement from Plaintiff's treating therapist, social worker Bahr. I disagree. First, the medical records from Plaintiff's therapy sessions are complete including both objective findings as well as opinions of Mr. Bahr. Moreover, the Regulations only require an ALJ to affirmatively seek out medical source statements from acceptable medical sources. 20 C.F.R. § 416.913(b)(6), (c). Social workers like Mr. Bahr are not acceptable medical sources. 20 C.F.R.§§ 416.902, 416.927(d).

c. Failure to order a psychiatric consultative examination

The Plaintiff also argues that the ALJ erred in failing to order a consultative psychiatric examination. The decision to order a consultative examination is made on a case-by-case basis at the discretion of the Commissioner. See 20 C.F.R. §§ 404.1517, 404.1519-19b, 416.917, 416.919-19b. "An ALJ is not obligated to order a consultative examination if the facts do not warrant or suggest the need for such an examination. Where a plaintiff suggests a possible mental impairment, the ALJ must assess whether there is any evidence of work-related functional limitations resulting from the possible mental impairment which have not been adequately addressed in the record." Brown v. Astrue, No. 11-CV-6392T, 2012 WL 2953213, at *7 (W.D.N.Y. July 19, 2012) (citation omitted).

Here, there is substantial evidence in the record to support the ALJ's conclusion to assess limitations resulting from Plaintiff's mental health issues.  The record was complete with notes from Plaintiff's mental health providers, from her therapy sessions as well as psychiatric evaluations.  The Court accordingly concludes that the ALJ did not abuse his discretion in declining to order a renewed consultative psychological examination.

**B.   Failure to Find that Plaintiff's diabetes and depression were severe impairments**

Plaintiff next argues that the ALJ improperly concluded that her diabetes and depression conditions were not severe. The ALJ considered Plaintiff's symptoms and the extent to which the symptoms

could reasonably be accepted as consistent with the objective medical evidence and other evidence including opinion evidence. T.23.  First, he followed a two step process to determine whether there is an underlying medically determinable physical or mental impairment that could be reasonable expected to produce the pain or other symptoms. The ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  Second, the ALJ evaluated the intensity, persistence and limiting effects of the symptoms to determine the extent to which they limit the Plaintiff's functioning. The ALJ concluded that there was little objective medical evidence which demonstrated that the impairments would have more than a minimal effect on Plaintiff's ability to work. T.25.  He found little or no evidence in the record to show that her diabetes was not well controlled.  T. 25.  Similarly, there was no medical evidence that her hypertension was not well controlled. With regards to Plaintiff's depression, the ALJ noted that not only were Plaintiff's symptoms improving but that her GAF scores of approximately 60 suggest that the impairment was not severe. Moreover, her activities of daily living did not suggest that her impairments had more than a minimal effect on her ability to work. The ALJ also considered the opinions of Dr. Sirotenko and Dr. Tsai. The ALJ gave "great weight" to the opinion of Dr. Sirotenko which found Plaintiff to be "within normal limits" because it was consistent with the medical record and activities of daily living. T.25.  The ALJ only gave Dr. Tsai's opinion some weight because it

was not consistent with the medical record, progress notes or activities of daily living. T.26. Specifically, the ALJ indicates that there is "little objective evidence" which support the finding that the claimant's ability to understand and remember short and simple instructions would be seriously limited. T.26

Because the record was not fully developed with the medical records of Dr. Tsai and Tanzman, the ALJ's conclusion that Plaintiff's depression and diabetes are not severe impairments is not supported by substantial evidence.  On remand, the ALJ will assess the severity of these impairments with the benefit of the medical records of these treating physicians.

C.   **Failure to Follow Treating Physician Rule**

Plaintiff next contends that the ALJ decision to accord "some weight" to Dr. Tsai's and Dr. Tanzman's medical source statement was erroneous.

The treating physician rule provides that the medical opinion of the physician engaged in the primary treatment of a claimant is given "controlling weight" if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In determining whether to give controlling weight to a treating physician's opinion, consideration must be given to factors, such as "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's

consistency with the record as a whole; and (iv) whether the opinion is from a specialist." Clark v. Commissioner of Social Security, 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)).

Here, Drs. Tsai and Tanzman noted that they were treating Plaintiff for two years and were knowledgeable about her history of diabetes, hypertension, depression, insomnia and diabetic neuropathy. T. 469.  They estimated that Plaintiff could walk three city blocks without rest or severe pain.  They limited Plaintiff's ability to sit up to two hours at one time and stand for up to 30 minutes before needing to get up. T. 469.  In an 8 hour workday, they estimated that Plaintiff could sit for a total of 2 hours and stand a total of less than two hours.  Plaintiff would need a job that permits shifting positions from sitting and standing and walking and need to take unscheduled breaks every two hours. T. 469. They estimated that Plaintiff could frequently lift and carry ten pounds or less but only rarely lift 20 pounds and never 50 or more pounds. T. 470.  She can occasionally twist, stoop, bend, climb ladders, stairs and rarely crouch or squat.  They further found that plaintiff was seriously limited but not precluded from remembering work-like procedures, understanding and remembering short, simple instructions, sustaining an ordinary routine without special supervision, work in coordination with or proximately to others, make simple work-related decisions, perform at a consistent pace without an unreasonable number and length of rest periods and respond appropriately to changes in a routine work setting. T. 471. Plaintiff was limited but satisfactory

in her ability to carry out short and simple instructions, maintain attention for two hour segments, maintain regular attendance and be punctual within customary usually strict tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, deal with normal work stress and be aware of normal hazards and take appropriate precautions. T. 471.   The physicians detailed that Plaintiff had a history of depression and poor memory that would "limit some of her work abilities." T. 471. They estimated that Plaintiff would be off task about 20% of the time during an 8 hour workday and there would be more than four days per month that would be "bad days." T. 471. Finally, the doctors noted that Plaintiff's diabetic neuropathy would likely affect Plaintiff's mobility and her depression and poor memory would make it difficult to carry out some work related tasks. T. 472.

The ALJ erred by finding that Drs. Tsai's and Tanzman's opinion was not consistent with the other substantial evidence in the record without the benefit of their treating medical records.   The record contains no objective medical evidence apart from Plaintiff's mental health treatment.   Dr. Tsai and Tanzman's medical source statement is the only medical evidence from them in the record. There is no indication of the frequency of Plaintiff's appointments with Dr. Tsai

and Dr. Tanzman, or the nature of the conditions for which they were treating Plaintiff. See generally 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

On remand, the ALJ shall contact Dr. Tsai and request copies of any office notes and other records pertinent to their treatment of Plaintiff to assess whether these physicians are "treating physicians" and the weight to accord their opinions.

### D.   The ALJ Erroneously Determined Plaintiff's Credibility

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms, but that Plaintiff's statements regarding the "intensity, persistence and limiting effects of those symptoms are not credible to the extent that they conflict with the ... residual functional capacity assessment." T.25. Plaintiff argues that the ALJ's credibility determination is unsupported by substantial evidence.

"The assessment of a claimant's ability to work will often depend on the credibility of her statements concerning the intensity, persistence and limiting effects of her symptoms." Otero v. Colvin, 12-CV-4757, 2013 WL 1148769, at *7 (E.D.N.Y. Mar. 19, 2013). Thus, it is not logical to decide a claimant's RFC prior to assessing her credibility. Id. This Court, as well as others in this Circuit, have found it improper for an ALJ to find a Plaintiff's statements not fully credible simply "because those statements are inconsistent with the ALJ's own RFC finding." Ubiles v. Astrue, No. 11-CV-6340T (MAT),

2012 WL 2572772, at *12 (W.D.N.Y. July 2, 2012) (citing Nelson v. Astrue, No. 5:09-CV-00909, 2012 WL 2010 3522304, at *6 (N.D.N.Y. Aug. 12, 2010), report and recommendation adopted, 2010 WL 3522302 (N.D.N.Y. Sept. 1, 2010); other citations omitted)). Instead, SSR 96-7p requires that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record." SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996); 20 C.F.R. §§ 404.1529, 416.929.

Here, the ALJ measured Plaintiff's credibility by evaluating all of the required factors bearing on Plaintiff's credibility prior to deciding Plaintiff's RFC.  He discussed Plaintiff's daily activities, frequency and intensity of Plaintiff's symptoms, the effectiveness of medication and the treatment of Plaintiff's symptoms. Ordinarily, the ALJ's determination of credibility issues are given great deference. Gernavage v. Shalala, 882 F.Supp. 1413, 1419, n.6 (S.D.N.Y. 1995). However, because I find that the objective medical record needs to be developed, on remand, the ALJ is directed to re-assess Plaintiff's credibility considering any additional objective medical evidence.

## E.   The ALJ's Residual Functional Capacity Finding is Unsupported by Substantial Evidence

Plaintiff argues that the ALJ's RFC was not supported by substantial evidence because he erroneously failed to develop the record, found her diabetes and depression to be non-severe, found her not entirely credible and assigned the medical source statement from Drs. Tanzman and Tsai only some weight.  On remand, the ALJ is

directed to re-assess Plaintiff's RFC based on any new medical evidence.

## F. The ALJ's Step Five Determination Is Not Supported by Substantial Evidence

The ALJ relied upon the testimony of a VE in determining that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." T.26. Plaintiff contends that the VE's opinion cannot provide substantial evidence to support the ALJ's decision because it was based upon an incomplete hypothetical question.

At step five, the burden is on the Commissioner to prove that "there is other gainful work in the national economy which the claimant could perform." Balsamo v. Chater, 142 F.3d 75 (2d Cir. 1998). The ALJ properly may rely on an outside expert, but there must be "substantial record evidence to support the assumption upon which the vocational expert based his opinion." Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983). A VE's opinion in response to an incomplete hypothetical question cannot provide substantial evidence to support a denial of disability. See DeLeon v. Secretary of Health and Human Servs., 734 F.2d. 930, 936 (2d Cir. 1984) (finding that, as a result of the ALJ's failure to present the full extent of the claimant's physical disabilities, the record provided no basis for drawing conclusions whether the claimant's impairments rendered him disabled). Whether the ALJ's hypothetical was incomplete depends upon whether the ALJ properly characterized Dr. Tsai's and Dr. Tanzman's

opinions and correctly accounted for Plaintiff's limitations in his RFC assessment.   These factors are to be considered upon remand.

**CONCLUSION**

For the foregoing reasons, this Court finds that the Commissioner's denial of SSI was erroneous as a matter of law and not based on substantial evidence. The Court accordingly grants Plaintiff's Motion for Judgment on the Pleadings (Dkt #7) to the extent that the Commissioner's decision is reversed and the matter is remanded for further administrative proceedings consistent with this Decision and Order. Defendant's Motion for Judgment on the Pleadings (Dkt. #10) is denied.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     August 13, 2013
           Rochester, New York